IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| COURTNEY BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:14cv996-WC |
| | ) | |
| CITY OF DOTHAN, ALABAMA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

On September 26, 2014, Courtney Byrd ("Plaintiff") filed a complaint (Doc. 1) alleging that Lanice Bonds ("Defendant Bonds"), a police officer with the City of Dothan, Alabama, unlawfully struck him with his vehicle during a pursuit of Plaintiff as a burglary suspect.  Compl. (Doc. 1) at 2-3.  Plaintiff claims that Defendant Bonds violated his Fourth Amendment right against unreasonable seizure by using unreasonable or excessive force to effectuate his arrest.  *Id*. at 3, ¶7.  Based upon his factual allegations, Plaintiff asserts both a 42 U.S.C. § 1983 excessive force claim and a state-law battery claim against Defendant Bonds.  *Id*. at 3, 4.  Further, Plaintiff alleges a 42 U.S.C. § 1983 claim against the City of Dothan, Alabama, ("Defendant City") for negligent training of police officers.  *Id*. at 4.

Before the court is Defendants' Motion for Summary Judgment (Doc. 41) and its Brief in Support (Doc. 42); Plaintiff's Response in Opposition to Defendants' Motion for

Summary Judgment (Doc. 44); and Defendants' Reply (Doc. 42).  For the reasons that follow, the court finds that Defendants' motion is due to be GRANTED in part and DENIED in part.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).[1]  Only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Vehicleriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[1] On December 1, 2010, amendments to Rule 56 became effective.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens*." *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

A reviewing court is restrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 54 (11th Cir. 2012) (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a

4

motion for summary judgment or for a directed verdict.").  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

## III.    STATEMENT OF FACTS

Pursuant to the court's scheduling order, the parties have jointly agreed that the following facts are uncontested for purposes of Defendant's motion for summary judgment:

On September 28, 2012, Dothan Police officers responded to a burglary call at 2101 Stonebridge Road.  Police officers were able to apprehend Mr. Calvin Cochran ("Mr. Cochran") in the backyard of the residence.  The second suspect in the burglary scaled a privacy fence and fled the scene.   Officers issued a "be on the lookout" ("BOLO") for the second suspect, along with his description.

Sergeant Maurice Eggleston ("Sgt. Eggleston") and Investigator Devellus Butler ("Investigator Butler") were working on a series of burglaries that had taken place in Dothan and responded to the burglary at 2101 Stonebridge Road.  When they arrived, Sgt. Eggleston spoke to Mr. Cochran, the suspect in custody.  Mr. Cochran informed Sgt. Eggleston that he lived with his sister, Patience Cochran, at the Henry Green apartment complex located on South Lena Street, which is approximately one-and-a-half miles from the scene of the burglary.  Sgt. Eggleston recognized Mr. Cochran, and based upon his prior contact with him, Sgt. Eggleston believed that the second suspect who fled the scene was Plaintiff.

Sgt. Eggleston, along with Investigator Butler, went to the Henry Green apartment complex to talk to Patience Cochran about her brother and Plaintiff.  When they arrived at the apartment, they discovered Plaintiff's brother, Cortavious Byrd, with Patience Cochran. Investigator Butler left Sgt. Eggleston at the apartment while he went to move their police vehicle to the front of the complex.

As Sgt. Eggleston was talking to Cortavious Byrd and Patience Cochran, he heard Sergeant Jeff Garrett ("Sgt. Garrett") call on the radio that the second suspect (later identified as Plaintiff) had crossed the 1000 block of South Alice Street.  Since that location is very near the Henry Green apartment complex, Sgt. Eggleston looked out the screen door of the apartment.  When he did, he saw Plaintiff coming from behind a house heading toward the apartment complex.

As Plaintiff approached the apartment complex, an unmarked Houston County Sheriff's vehicle turned from South Alice Street on to West Franklin Street.  Plaintiff turned around and ran south away from the apartment complex.  Plaintiff jumped a fence and ran behind the houses located between South Alice Street and South Lena Street.

Houston County Deputy Sheriff Donovan Kilpatrick ("Deputy Kilpatrick") was driving an unmarked patrol vehicle. He exited his vehicle to pursue Plaintiff, but stopped at the fence.  Sgt. Eggleston left the apartment and pursued Plaintiff on foot.  Sgt. Eggleston jumped the fence and pursued Plaintiff behind the houses located between South Lena Street and South Alice Street.

Sgt. Eggleston was in plain clothes, so he identified himself as a police officer. Plaintiff turned towards South Alice Street, but then turned east towards South Lena Street with Sgt. Eggleston in pursuit.

Lieutenant Scott Heath ("Lt. Heath"), who was driving an unmarked patrol vehicle, was in the area looking for Plaintiff.  He heard the radio call regarding the foot pursuit and drove south on South Lena Street.  Sgt. Eggleston saw Lt. Heath's and Officer Bonds's vehicles pass in front of him as he ran towards South Lena Street in pursuit of Plaintiff. Lieutenant Heath was traveling approximately fifteen miles per hour and was looking to his right to see if he could spot Plaintiff.

When Lt. Heath reached 801 South Lena Street, he saw Plaintiff running toward the street.  Lieutenant Heath stopped his patrol vehicle in the street with the intent of pursuing Plaintiff on foot.  Officer Bonds's vehicle was traveling south on South Lena Street. Plaintiff was struck by Officer Bonds's vehicle.

Lieutenant Heath reached Plaintiff first with Sgt. Eggleston arriving next.  No one used any force against Plaintiff when he was taken into custody.  When Plaintiff was handcuffed, he complained of pain in his legs.

Paramedics and an ambulance responded to the scene.  Plaintiff was transported to the Southeast Alabama Medical Center where he was treated for a non-displaced left tibia fracture and released from the hospital that evening.  On October 1, 2012, Plaintiff returned to the hospital where he was diagnosed with a right tibial plateau fracture.  Plaintiff did not require surgery for his injury.

Plaintiff was charged with the burglary at 2101 Stone Bridge Road.

Apart from the above uncontested facts, the court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, Defendants' Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to Plaintiff, the nonmoving party, establish the following relevant facts:

Plaintiff was standing in a yard when he saw Defendant Bonds's vehicle turn off West Franklin Street and travel south towards him on South Lena Street. The person whose yard Plaintiff was standing in informed him that the police were in the road. At that point, Plaintiff demonstrated his intent to surrender to police authority by standing still and putting his hands up. Despite seeing Plaintiff's act of surrender, Defendant Bonds continued to approach Plaintiff with his vehicle, turning Plaintiff's direction and hopping a curb, ultimately striking Plaintiff's legs with the bumper of his vehicle. After Plaintiff was struck by Defendant Bonds's vehicle, Sgt. Eggleston told Plaintiff: "You ain't going home today . . . we got your ass."

Plaintiff was in the grass, approximately two feet away from the curb, when he was hit by Defendant Bonds's vehicle; Plaintiff never entered the street on South Lena Street. Plaintiff testified that he had time to turn around and face Defendant Bonds prior to the impact. Plaintiff did not move further away from the curb when he saw Defendant Bonds's vehicle approaching him because he believed that Defendant Bonds would not drive his vehicle onto the grass; instead, he believed Defendant Bonds would stop his vehicle, jump out, and arrest him.

In his deposition, Lt. Heath testified that he was standing near the rear of his vehicle on South Lena Street approximately one to two yards away from the point of impact of Defendant Bonds's vehicle with Plaintiff. Prior to the impact, Lt. Heath saw Defendant Bonds's vehicle traveling toward him. Despite only being a yard or two away from the impact point, Lt. Heath was never concerned that Defendant Bonds's vehicle might make impact with Lt. Heath's vehicle. Further, Lt. Heath testified that Defendant Bonds was driving approximately ten miles per hour at the point of impact. Despite this slow rate of speed, Lt. Heath testified that Defendant Bonds's vehicle traveled a car length after making impact with Plaintiff. Lieutenant Heath witnessed Plaintiff facing the direction of the vehicle at the point of impact, and did not believe Plaintiff was moving in any certain direction. Lieutenant Heath also never heard the sound of any braking by Defendant Bonds prior to the impact with Plaintiff, nor could he identify any skid marks or brake marks in photographs of the scene.

Sergeant Eggleston's testimony is different than that of Plaintiff, Lt. Heath, and Defendant Bonds. In his deposition, Sgt. Eggleston testified that he was pursuing Plaintiff on foot. At the time of impact, Sgt. Eggleston was standing on the edge of South Lena Street, ten to twenty yards north of where the impact occurred. When Sgt. Eggleston reached South Lena Street, he saw Plaintiff turn around and head back towards a line of trees. At that time, Sgt. Eggleston turned and started running down South Lena Street. As Sgt. Eggleston was coming to the street, he saw Defendant Bonds's vehicle go by. Sergeant Eggleston then saw Plaintiff attempt to turn around, and Defendant Bonds's vehicle veer to the right.

In discussing where Plaintiff was at the moment before impact with Defendant Bonds's vehicle, Sgt. Eggleston testified that he saw Plaintiff step into the street and then turn back around.  Sergeant Eggleston stated that when he (Sgt. Eggleston) stepped onto the street, he could see Plaintiff and Defendant Bonds's vehicle.  Sgt. Eggleston did not hear any noise, including squealing brakes, prior to the impact of Defendant Bonds's vehicle with Plaintiff.  Sergeant Eggleston could not identify any skid marks or brake marks in photographs of the scene.

In his deposition, Defendant Bonds testified that he first saw Plaintiff looking backwards in a southbound direction.  Defendant Bonds alleges he was traveling at approximately fifteen to twenty miles per hour when his vehicle struck Plaintiff, but he does not dispute Lt. Heath's opinion that he was traveling about ten miles per hour at the point of impact.  Defendant Bonds did not have his lights or sirens on at the time of the incident.  Despite a lack of brake or skid marks at the scene, Defendant Bonds stated that he slammed on his breaks about a second or so before the impact occurred.  Contrary to that assertion, Defendant Bonds also states that once Plaintiff placed his hand on the hood of his vehicle, he took his foot off the gas to avoid hitting Plaintiff.

Still yet, Defendant Bonds's statement in the Accident Report alleges a slightly different story.  In his statement in that report, Defendant Bonds alleged that "the suspect ran on the grass just beside the curb.  I attempted to steer my vehicle to avoid striking him.  My vehicle kept pulling to the right and I ran up on the curb, striking the suspect with the front of my patrol vehicle."

Defendant Bonds has previously been disciplined by Defendant City for careless use of equipment (his vehicle) on two occasions.  Defendant Bonds received a formal counseling report for a vehicle accident he caused on March 13, 2009.  Defendant Bonds was later suspended without pay due to a vehicle accident he caused on January 12, 2011, wherein he collided with the rear of another vehicle.  Other than the counseling and suspension, Defendant Bonds did not receive any specific or individual remedial training involving the use of his vehicle.  Prior to his employment with Defendant City, Defendant Bonds was involved in two other vehicle accidents while employed as a police officer for the City of Abbeville.

Defendants have not produced or located any dash cam video showing Defendant Bonds's vehicle impact with Plaintiff.  Therefore, the evidence in this case is limited to the eyewitness accounts of Plaintiff and several Defendant City police officers, along with photographs of the scene taken soon after the vehicle impact.  By all accounts, on the day of vehicle impact with Plaintiff, it was dry with no rain, and no hazardous weather or road conditions were present.

## IV.   DISCUSSION

Defendants seek summary judgment on each of Plaintiff's claims.  With regards to Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force and unreasonable seizure claim, Defendants assert that Plaintiff did not suffer a constitutional violation and, even if he did, Defendant Bonds is entitled to qualified immunity.  Doc. 42 at 10-20.  With regards to Plaintiff's 42 U.S.C. §1983 failure to train claim, Defendants argue that the claim fails because Plaintiff cannot establish deliberate indifference on the part of Defendant City

11

regarding failure to train its police officers. *Id*. at 20-23. Finally, with regards to Plaintiff's state-law battery claim, Defendants argue that Plaintiff cannot establish that Defendant Bonds intentionally struck him with his vehicle and, even if he could, Defendant Bonds is entitled to discretionary-function immunity under Alabama law. *Id*. at 23-27. To resolve Defendants' motion, the court begins its analysis with a discussion of the elements of each of Plaintiff's claims.

### A.        Forty-two U.S.C. § 1983: Fourth Amendment Excessive Force Claim

In order to maintain an action for damages under 42 U.S.C. § 1983, a plaintiff must allege and prove that: (1) the plaintiff was deprived of a federally protected right; (2) the defendant deprived the plaintiff of that right by acting under color of state law; and (3) the plaintiff was injured as a proximate result of the deprivation. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 150 ("The terms of section 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show . . . that the defendant acted 'under color of law.'"); *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."). In a case of excessive force, the federally protected right is the Fourth Amendment, which prohibits the use of unreasonable force in effecting a seizure of a suspect. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). Thus, to prevail on a § 1983 claim for excessive use of force, a plaintiff must show that he was seized within the meaning of the Fourth

Amendment, and that during the course of seizure he suffered an injury which resulted directly and only from the use of force that was clearly excessive and unreasonable. *Puglise v. Cobb Cty.*, 4 F. Supp. 2d 1172, 1178 (N.D. Ga. 1998).

"[A] 'seizure' under the Fourth Amendment occurs only 'when there is a governmental termination of freedom of movement *through means intentionally applied*.'" *Knight v. Pugh*, 801 F. Supp. 2d 1235, 1241 (M.D. Ala. 2011) (quoting *Sacremento v. Lewis*, 523 U.S. 833, 844 (1998) (emphasis in original)); *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a seizure occurs within the meaning of the Fourth Amendment when there is a governmental application of physical force or, where that is absent, a show of authority to which the subject yields). The reasonableness of a particular seizure depends not only on when it is made, but how it is carried out. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citing *United States v. Ortiz*, 422 U.S. 891, 895 (1975); *Terry v. Ohio*, 392 U.S. 1, 28-29 (1968)). The determination of reasonableness requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests with the governmental interests that allegedly justify the intrusion. *United States v. Place*, 462 U.S. 696, 701 (1983). Courts judge the reasonableness of a particular use of force from the perspective of a reasonable police officer making a split-second judgment in tense and rapidly-changing circumstances. *Graham*, 490 U.S. at 396-97. The reasonableness inquiry in an excessive force case is an objective one: "the question is whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

*Id*. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978); *Terry*, 392 U.S. at 21).

Here, Plaintiff alleges that he was deprived of his Fourth Amendment right to be free from unreasonable seizure when Defendant Bonds used excessive force to apprehend him.  Doc. 1 at 3.  Plaintiff alleges that this deprivation occurred while Defendant Bonds was acting under the color of Alabama state law and that, as a result, Plaintiff suffered fractures in the bones of both of his legs.  *Id*. at 2-3.  Thus, Plaintiff asserts that Defendant Bonds is liable under 42 U.S.C. § 1983 for excessive or unreasonable use of force.  *Id*.

### B.  Forty-two U.S.C. § 1983: Failure to Train Claim

Inadequate police training can rise to the level of a policy or custom that is actionable under § 1983 in "limited circumstances."  *City of Canton v. Harris,* 489 U.S. 378 (1989).  "These limited circumstances only exist where the municipality's training program or supervision is inadequate, this failure to train or supervise is a city policy, and that city policy results in the employees violating a citizen's constitutional rights."  *Id.* at 389.  It is only when the failure to train amounts to "deliberate indifference" that it can properly be characterized as a "policy" or "custom" necessary for § 1983 to attach.  *Id.*  To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998); *see Church v. City of Huntsville,* 30 F.3d 1332, 1342–46 (11th Cir. 1994) (holding that the plaintiffs were not likely to succeed on the merits of their failure to train claim without proof that the city was aware of a prior incident in which

14

constitutional rights were similarly violated); *see also Popham v. City of Talladega*, 908 F.2d 1561, 1564–65 (11th Cir. 1990) (finding no liability for failure to train when there was no pattern of incidents to put the city on notice of a need to train).

Plaintiff alleges that Defendant City is an entity that hires and trains all Dothan police officers, including Defendant Bonds.  Doc. 1 at 4.  Plaintiff alleges that Defendant City "has failed to adequately train its officers on how to effectuate arrests properly and to also educate them on what uses of force are allowed and prohibited when dealing with suspects."  *Id*.  Plaintiff states that the misconduct of Defendant Bonds was "thus sanctioned by [Defendant City]."  *Id*.  Plaintiff asserts that Defendant City's "indifference to this problem constitutes a causal link between the negligent failure to train and [Plaintiff's] constitutional rights being violated.  Consequently, [Defendant City] is liable for this claim."  *Id*.

### C.    State-Law Battery

In order to state a claim for battery under Alabama law, a plaintiff must show: (1) the defendant touched the plaintiff; (2) the defendant intended to touch the plaintiff; and (3) the touching was conducted in a harmful or offensive way.  *Wood v. Cowart Enterprises, Inc*., 809 So. 2d 835, 836 (Ala. Civ. App. 2001).

Plaintiff alleges that Defendant Bonds "committed an intentional, harmful, and offensive touching on [Plaintiff's] person with his vehicle without justification, provocation, or reason, and did so while serving as an officer of the Dothan police department, but beyond the scope of the authority and discretion of their positions. Consequently, [Defendant Bonds] is liable for this claim."  Doc. 1 at 4.

**D.    Application**

Against the above backdrop of the elements of each claim which Plaintiff is required to prove in order to sustain his claims, the court turns to consider Defendants' motion for summary judgment.

### 1.    Plaintiff's 42 U.S.C. § 1983 Fourth Amendment Excessive Force Claim

Defendant Bonds asserts that he is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claim because Plaintiff did not suffer a constitutional violation.  Doc. 42 at 10-16.  Specifically, Defendant Bonds argues that Plaintiff was not seized by Officer Bonds within the meaning of the Fourth Amendment; as such, Defendant Bonds argues that Plaintiff's Fourth Amendment excessive force claim fails as a matter of law.  *Id.*  Nonetheless, Defendant Bonds also argues that, even if Plaintiff could establish a constitutional violation, Defendant Bonds is entitled to qualified immunity for his actions.  *Id*. at 16-20.  The court will address each argument, in turn.

*Whether Plaintiff's Fourth Amendment Excessive Force Claim Fails as a Matter of Law*

Defendant Bonds asserts that Plaintiff cannot establish that he was subjected to a legally cognizable "seizure" as required under the Fourth Amendment; therefore, he cannot establish a Fourth Amendment violation.  Doc. 42 at 11.  Defendant Bonds argues that "there is no evidence that [Defendant Bonds] intended to strike [Plaintiff] or to use his vehicle to seize him."  Doc. 42 at 12.  Because there is no evidence (according to Defendant Bonds) that his vehicle's contact with Plaintiff was intentional, the strike was merely an

unintended consequence of the seizure, which cannot form the basis of a Fourth Amendment violation.  Doc. 42 at 13.

For support, Defendant Bonds points to *Troupe v. Sarasota County, Florida*, 419 F.3d 1160 (11th Cir. 2005).  In *Troupe*, the Eleventh Circuit held:

> A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . nor even when there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement through *means intentionally applied*.

419 F.3d at 1166 (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989)) (emphasis in original).  He also points to several cases establishing that the unintended consequences of lawful governmental action are insufficient to support a Fourth Amendment claim.  *See Sacramento*, 523 U.S. at 844 (holding that "[n]o Fourth Amendment seizure would take place when a pursuing police vehicle sought to stop the suspect only by the show of authority represented by flashing lights and continuous pursuit, but accidently stopped the suspect by crashing into him."); *Evans v. Hightower*, 117 F.3d 1318 (11th Cir. 1997) (holding that "the act of being run over by Hightower's vehicle was not part of the seizure, but was rather, the accidental effect of otherwise lawful government conduct" where there was no "evidence that the act of running him over with a patrol vehicle was intended as a means to seize him"); and *Medeiros v. O'Connel*, 150 F.3d 164, 169 (2d Cir. 1998) (no Fourth Amendment violation when a hostage was hit by a bullet fired by police because the strike was an unintended consequence of a governmental action).

17

In his response, Plaintiff agrees that a Fourth Amendment violation requires "an intentional acquisition of physical control."  Doc. 44 at 17; *Brower*, 489 U.S. at 196.  However, Plaintiff argues that there remains a factual dispute as to whether Defendant Bonds intentionally and unreasonably used his vehicle to "seize" Plaintiff.  Doc. 44 at 15.  For support, Plaintiff supports to several inconsistencies that he claims cast doubt upon Defendant Bonds's claim that the contact was unintentional.  Doc. 44 at 15-16.  These inconsistencies include, but are not limited to, the following:

- Defendant Bonds's testimony concerning whether the point of impact with Plaintiff was on the curb or in the street.

- Defendant Bonds's testimony that he was unable to control his vehicle, and that his vehicle "kept pulling to the right" despite travelling at ten to twenty-five miles per hour.

- Defendant Bonds's testimony that he slammed on his brakes, although there are no visible brake or skid marks in photographs of the scene.

- Defendant Bonds's testimony that he let off the gas pedal in order to avoid striking Plaintiff after Plaintiff's hands were on the hood of his vehicle.

*Id*.

The court agrees with Plaintiff.  The aforementioned inconsistencies could lead a reasonable juror to find that Defendant Bonds intentionally struck Plaintiff with his vehicle. While the cases cited by Defendant Bonds indeed support his argument that an unintentional consequence of lawful government action cannot form the basis of a Fourth Amendment claim, the court cannot say, under the facts as asserted by Plaintiff, that the contact between Defendant Bonds's vehicle and Plaintiff was unintentional.  Consequently,

18

the court cannot say that Defendant Bonds did not use his vehicle as a means of seizing Plaintiff.  Accordingly, the court finds that Plaintiff has produced evidence sufficient to create an issue of fact regarding whether Defendant Bonds intentionally struck Plaintiff with his vehicle.  Defendant Bonds's motion for summary judgment—based upon the argument that Plaintiff's Fourth Amendment excessive force claim fails as a matter of law—is due to be denied.

*Whether Defendant Bonds is Entitled to Qualified Immunity*

Defendant Bonds argues that he is entitled to summary judgment on Plaintiff's excessive force claim, regardless of whether Plaintiff can establish a constitutional violation, because he is due qualified immunity.  Doc. 42 at 16-20.  "Qualified immunity protects government officials performing discretionary functions from civil trials . . . and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (internal quotations and citations omitted).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee,* 284 F.3d at 1194 (internal quotation marks and citations omitted).  To receive qualified immunity, a defendant "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.*  In making that determination, courts consider "whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that

were in his power to utilize." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee,* 284 F.3d at 1194.  To determine whether a plaintiff has satisfied his burden, courts will proceed with a two-part inquiry.  One part of the analysis requires a court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, establish that an officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court will determine "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition."[2]  *Id*.

In the context of the Fourth Amendment, it is well established that "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville, Alabama,* 608 F.3d 724, 737 (11th Cir. 2010) (citing *Lee,* 284 F.3d at 1197).  As previously noted, whether the force is reasonable relies on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 737–38 (quoting *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir.2002)); *see also Terry,* 392 U.S. at 22–27 (Fourth

---

[2] The court notes that the two-part, sequential inquiry established in *Saucier* is no longer mandatory. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Amendment jurisprudence has long recognized that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.).  To balance the necessity of the use of force against an arrestee's constitutional rights, a court turns to several factors, including "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Vinyard,* 311 F.3d at 1347).  Whether a constitutional violation occurred is measured by the "objective reasonableness" standard.  *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir.2008) (citing *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004)).  An officer is entitled to qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive.  *Graham,* 490 U.S. at 396–397; *Brown,* 608 F.3d at 738.

Here, it is clear that Defendant Bonds was acting within the scope of his discretionary authority.  The contact between Defendant Bonds's vehicle and Plaintiff occurred while Defendant Bonds was on patrol and after he received a BOLO for a suspect in an alleged burglary nearby.  Doc. 42 at 2-3; Doc. 44 at 3-4.  Defendant Bonds responded to the BOLO, pursued Plaintiff, and ultimately participated in his arrest.  *Id.*  That type of law enforcement conduct satisfies the discretionary function element required for qualified immunity.  *See Marshall v. West*, 559 F. Supp. 2d 1224, 1231 (M.D. Ala. 2008) (officers were engaged in a discretionary function during the pursuit and arrest of the plaintiff).  As Defendant Bonds has satisfied his initial burden of establishing that he was acting within

the scope of his discretionary authority, the burden now shifts to Plaintiff to establish that qualified immunity is not appropriate.

Accepting Plaintiff's version of events as true, Defendant Bonds struck Plaintiff with his patrol vehicle while Plaintiff was standing in a yard with his hands up. Doc. 44 at 7. At the time of impact, Plaintiff was surrounded by several other officers who had also been in pursuit. *Id.* Plaintiff was not actively resisting arrest or attempting to evade arrest by flight, nor did he pose an immediate threat to officer safety or the safety of others. Balancing the necessity of the use of force under Plaintiff's account of the incident with Plaintiff's constitutional rights, the court determines that hitting Plaintiff with a vehicle was not needed in order to effectuate his arrest and was clearly unreasonable and excessive. Under the circumstances, the court concludes that Defendant Bonds's conduct, as alleged by Plaintiff, violated Plaintiff's Fourth Amendment right to be free from excessive force during arrest.

Having concluded that Plaintiff has made a sufficient showing of excessive force, the second part of the *Saucier* analysis requires the court to determine whether Defendant Bonds is nonetheless entitled to qualified immunity on the ground that the law had not been clearly established at the time of the incident that the use of such force was excessive. *Lee*, 284 F.3d at 1198. Because identifying factually similar cases in the context of excessive force may be difficult, courts may alternatively consider whether the law "inevitably lead[s] every reasonable officer in [the defendant's] position to conclude the force was unlawful." *Priester v. City of Riviera Beach, Florida*, 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)). The court

concludes that, based upon Plaintiff's version of events, every reasonable officer in Defendant Bonds's shoes would have found that intentionally hitting Plaintiff with a vehicle after Plaintiff had surrendered with his hands in the air, was unlawful. Thus, the court concludes that Plaintiff has satisfied his burden of showing that a Fourth Amendment violation occurred, and that the right to be free from this kind of excessive force was clearly established at the time of the incident. As such, Plaintiff has satisfied his burden of showing that Defendant is not entitled to qualified immunity. Defendant Bonds's motion for summary judgment—based upon the argument that he is entitled to qualified immunity— is due to be denied.

Because Plaintiff's excessive force claim does not fail as a matter of law and because Defendant Bonds is not entitled to qualified immunity, the court finds that summary judgment is due to be DENIED as to Plaintiff's 42 U.S.C. § 1983 excessive force claim against Defendant Bonds.

### 2.  Plaintiff's Forty-two U.S.C. § 1983 Failure to Train Claim

Defendant City asserts that it is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 failure to train claim because Plaintiff cannot establish deliberate indifference on the part of Defendant City regarding failure to train its police officers. Doc. 42 at 20-23.

In response, Plaintiff alleges that "Defendant Bonds intentionally operated his vehicle in an unsafe, careless, and objectively unreasonable manner in effectuating the

arrest of [Plaintiff]."[3]   Doc. 44 at 22.   Plaintiff points to two previous incidents where Defendant Bonds was disciplined and suspended without pay for crashing his police vehicle into other vehicles while employed with Defendant City. *Id*. The first incident occurred in March 2009 when Defendant Bonds pulled out in front of an oncoming vehicle. Doc. 45-8. Defendant Bonds was cited as being careless in the use of Defendant City's equipment and received a formal counseling report from Defendant City. *Id*. The second incident occurred in January 2011 when Defendant Bonds struck the rear of a vehicle that was in front of him. Doc. 45-9. Defendant Bonds was cited for the incident and received a one-day suspension, in accordance with Defendant City's policy.[4] *Id*. at 1. Notably, neither incident involved the pursuit of a suspect or the use of force to effectuate an arrest.

Also, prior to his employment with Defendant City, Plaintiff states that Defendant Bonds was involved in "a couple other vehicle accidents while employed as an officer for the City of Abbeville." Doc. 44 at 22. However, like the accidents discussed above, neither involved a pursuit of a suspect or the use of force during an arrest. Instead, one incident

---

[3] Plaintiff's response to Defendants' motion for summary judgment focuses on a different failure by Defendant City to train its officers than Plaintiff's complaint. Plaintiff's complaint focuses on Defendant City's failure to train its officers on the proper use of force in arresting a suspect while Plaintiff's response to summary judgment focuses on Defendant City's failure to train its officers on the safe and careful use of a police vehicle in effectuating an arrest. *Compare* Doc. 1 at 4 *with* Doc. 44 at 22-23. Because Plaintiff's response focuses on several vehicle accidents involving Defendant Bonds during his employment as an officer that are unrelated to using a vehicle—or any other means of force—to arrest a suspect, it appears to the court that Plaintiff is not attempting to argue that Defendant City failed to train its officers with regards to the levels of force needed to effectuate an arrest, and instead is arguing that Defendant City failed to train its officers on vehicle safety, which led to a violation of Plaintiff's Fourth Amendment rights.

[4] Defendant Bonds's first incident resulted in the accumulation of one "point" on his record for the purposes of disciplinary progression. Doc. 45-8 at 1. The second incident also resulted in the accumulation of one "point." Doc. 45-9 at 1. Because Defendant Bonds had two "points," he violated Defendant City's Motor Vehicle Operations Policy, and was thus suspended for one day without pay pursuant to Defendant City's policy. Doc. 45-9 at 3.

involved a deer running into Defendant Bonds's vehicle, and the other incident occurred when a suspect feeling from the police struck Defendant Bonds's vehicle.  Doc. 46-2 at 2-3.  Nonetheless, Plaintiff finds problematic that Defendant City did not provide any specific or individual remedial training to Defendant Bonds involving the use of his police vehicle for accidents that occurred while Defendant Bonds was employed by Defendant City and the City of Abbeville.  Doc. 44 at 22.

As an initial matter, Plaintiff cannot maintain a claim under § 1983 because, even if Defendant City failed to train its officers regarding the safe and reasonable use of their vehicles, such a failure would not result in a violation of a citizen's constitutional rights. *See Canton*, 489 U.S. at 389 (noting that a § 1983 claim for failure to train is actionable in limited circumstances where a failure to train is a city policy and *that policy results in the employees violating a citizen's constitutional rights*).  Indeed, there is no constitutional right to be free from the negligence or carelessness of others.  And, Plaintiff has not presented any evidence that the negligence or carelessness of officers in the use of their vehicles has led to incidents of arrestees being subjected to excessive force during arrest. Plaintiff seems to acknowledge as much, recognizing that any failure on the part of Defendant City to train its officers regarding the proper use of their vehicles did not *cause* him to suffer a violation of his constitutional rights, but instead only placed him in greater danger of suffering such a violation.  Plaintiff states: "Consequently, [Plaintiff] was placed in *greater danger of suffering a violation of constitutional rights* due to the deliberate indifference of [Defendant City] in failing to provide adequate training to Defendant Bonds in operating his vehicle in a safe and reasonable manner."  Doc. 44 at 23 (emphasis added).

25

Because Plaintiff cannot establish that the failure to train is a policy that results in the violation of the constitutional rights of its citizens, the court determines that Plaintiff's § 1983 failure to train claim fails. *See Church,* 30 F.3d at 1342–46 (holding that the plaintiffs were not likely to succeed on the merits of their failure to train claim without proof that the city was aware of a prior incident in which constitutional rights were similarly violated).

Even if Plaintiff could show that Defendant City's failure to train its officers with regards to the careful use of their vehicles resulted in a violation of his constitutional rights, the isolated and unrelated events to which Plaintiff points do not show deliberate indifference on the part of Defendant City.  *See Gold*, 151 F.3d at 1346 (To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.").  Had Plaintiff presented evidence that Defendant Bonds had been involved in other incidents of excessive force with his police vehicle or other police instrument, Defendant City *may* have had a responsibility to remediate and train Defendant Bonds on the proper use of force when making an arrest.  Or, had Plaintiff presented evidence that Defendant Bonds intentionally engaged in conduct that caused damage or injury to other property or individuals, Defendant City *may* have had notice of the need to intervene.  However, Plaintiff has merely presented evidence that Defendant Bonds had two vehicle accidents while employed by Defendant City and two vehicle accidents while employed with the City of Abbeville Police Department that were completely unrelated to pursuing a suspect or to making an arrest.  As such, Plaintiff's evidence is insufficient to establish, or even suggest, notice on the part of Defendant City

26

that additional officer training was needed in order to protect the constitutional rights of its citizens.  Therefore, summary judgment is due to be GRANTED as to Plaintiff's § 1983 failure to train claim against Defendant City.

### 3.  Plaintiff's State-Law Battery Claim

Defendant Bonds argues that he is due qualified immunity from the state-law battery claim asserted against him.  Alabama law recognizes at least two types of immunity from suit or liability for the individual executive acts of public officers.  *Sheth v. Webster,* 145 F.3d 1231, 1236 (11th Cir. 1998).  The first is absolute "state-agent" immunity, which is afforded to certain state constitutional officers.  *Id.*  The second type of immunity, described as "discretionary function" immunity, is not absolute and applies when a state officer or employee commits a tort while engaged in the exercise of a discretionary function.  *Taylor v. Shoemaker,* 605 So.2d 828, 831 (Ala. 1992) (*citing Sellers v. Thompson,* 452 So.2d 460 (Ala. 1984)).  Defendant Bonds argues that discretionary function immunity is the applicable immunity to this case.

The relevant Alabama statute establishing discretionary function immunity is Ala. Code § 6–5–338(a) (1975), which reads:

> Every peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof . . . shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Under the discretionary function immunity analysis, a court must first determine if an officer was performing a discretionary act when the alleged wrong occurred.  *Wood v.*

*Kesler,* 323 F.3d 872, 883 (11th Cir. 2003).  Discretionary acts are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances."  *Id.* at 2; *see also L.S.B. v. Howard,* 659 So. 2d 43, 44 (Ala. 1995).  If the court finds that an officer was performing a discretionary act, then the burden shifts to the plaintiff to demonstrate that the officer acted in "bad faith, with malice or willfulness."  *See Wood,* 323 F.3d at 883; *see also Sheth,* 145 F.3d at 1238–1239.  "Acts of such a nature are not considered to be discretionary."  *Wright v. Wynn,* 682 So. 2d 1, 2 (Ala. 1996).

Here, the court finds that Defendant Bonds's pursuit of Plaintiff subsequent to a BOLO issued by Defendant City and the ultimate arrest of Plaintiff as a result of the contact with Defendant Bonds and other Dothan police officers were discretionary acts for purposes of discretionary function immunity.  *See Ex Parte Brown*, 182 So. 3d 495, 503-04 (Ala. 2015) (noting that an officer made a *prima facie* showing that he was entitled to immunity because evidence established that he was employed as a police officer and was acting in the line and scope of his employment as a law enforcement officer responding to a BOLO to apprehend a suspect).

Because Defendant Bonds has satisfied his initial burden, the burden now shifts to Plaintiff to present sufficient evidence that Defendant Bonds acted in bad faith, with malice or with willfulness in arresting him.  *See Wood,* 323 F.3d at 883.  The court concludes that Plaintiff has created a genuine issue of material fact as to whether Defendant Bonds's use of force was "so egregious as to amount to willful or malicious conduct or conduct engaged

28

in bad faith." *See Ex parte City of Tuskegee,* 932 So. 2d 895, 904 (Ala. 2005); *see also Ex parte City of Gadsden,* 781 So. 2d 936, 938 (Ala. 2000).   Under Plaintiff's version of events, he was standing in the grass with his hands up, indicating surrender, when Defendant Bonds hopped the curb with his vehicle and struck Plaintiff in the legs.   Such action could undoubtedly be considered malicious, in bad faith, or at a minimum, willful. For similar reasons that support denying federal qualified immunity to Defendant Bonds, the court concludes that Defendant Bonds is not entitled to discretionary function immunity under Alabama law.

Accordingly, Defendant Bonds's motion for summary judgment is DENIED as to Plaintiff's state-law battery claim.

## IV.   CONCLUSION

For the above stated reasons, it is

ORDERED that the Motion for Summary Judgment (Doc. 41) is GRANTED in part and DENIED in part.   With regards to Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claim, Defendants' motion for summary judgment is DENIED.   With regards to Plaintiff's state-law battery claim, Defendants' motion for summary judgment is DENIED.   With regards to Plaintiff's 42 U.S.C. § 1983 failure to train claim, Defendants' motion for summary judgment is GRANTED.   Accordingly, Plaintiff's failure to train claim is dismissed, and the City of Dothan, Alabama, is DISMISSED as a party to this action.

Done this 28th day of July, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE